IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00342-PAB-MEH

LORETTA KUYPER,
K.K., by and through her mother and next friend, Loretta Kuyper,

    Plaintiffs,

v.

BOARD OF COUNTY COMMISSIONERS OF WELD COUNTY,
DESIREE FLORES, in her individual capacity,
BARBARA SCHWABE, in her individual capacity,

    Defendants.
_____

**ORDER ON DEFENDANTS' MOTION FOR I.M.E.**
_____

Pending before the Court is Defendants' Motion to Compel Independent Medical Examination of Plaintiff K.K. [filed August 3, 2010; docket #75]. The motion is briefed and has been referred to this Court for disposition. [Docket #76.] Oral argument would not materially assist the Court in adjudicating this motion. For the following reasons, Defendants' motion is **granted in part and denied in part**.

**I.  Background**

Plaintiff instituted this action on February 17, 2009, but amended the complaint pursuant to Fed. R. Civ. P. 15(a) on March 11, 2009 and again on June 12, 2009. In essence, Plaintiffs allege that Defendants acted in willful, wanton or reckless regard for the safety and well-being of the Plaintiffs by placing a foster child into their home who thereafter allegedly sexually assaulted Plaintiff K.K., a three-year-old child. *See* Second Amended Complaint, docket #51, at 1. In addition to other forms of relief, Plaintiffs seek recovery for compensatory damages, "including

damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law." *Id.* at 15.

Through this motion, Defendants seek a psychological examination of the minor Plaintiff, K.K., who is currently six years old. Defendants state that they have learned through discovery Plaintiffs are seeking up to $3,000,000.00 in compensatory damages, in large part for the emotional distress and mental harm K.K. suffered as a result of the alleged sexual assault. Defendants have retained an expert who wishes to conduct five one-hour sessions with K.K., one one-hour interview with K.K.'s parents, and one one-hour interview with K.K.'s current therapist. Plaintiffs do not object to a psychological examination of K.K., but seek to limit the examination to one hour and have K.K.'s current therapist present.

## II.     Discussion

Rule 35 of the Federal Rules of Civil Procedure permits the court to order a party to submit to an independent examination by a suitably licensed or certified examiner when the party's "mental or physical condition ... is in controversy" and where the moving party has shown "good cause" for the requested examination. The court "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *See* Fed. R. Civ. P. 35(a)(2)(B). While Rule 35 should be construed liberally in favor of granting discovery, its application is left to the sound discretion of the court. *Simpson v. University of Colorado*, 220 F.R.D. 354, 362 (D. Colo. 2004) (citing *Eckman v. University of Rhode Island,* 160 F.R.D. 431, 433 (D.R.I. 1995)).

Based upon the requirements set forth in Rule 35, the Court will examine Defendants' motion first to determine whether they have established good cause for the request and, if so, will

proceed to determine whether Defendants have set forth appropriate scope, conditions, time, place and manner for the examination.

A. Good Cause

"A plaintiff in a negligence action who asserts mental or physical injury ... places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). Where a plaintiff claims ongoing mental harm, the plaintiff has placed his or her mental state in controversy. *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D. Conn. 1994) (citing *Tomlin v. Holecek*, 150 F.R.D. 628, 630 (D. Minn. 1993) (the "in controversy" and "good cause" requirements of Rule 35 are merged when a plaintiff claims an ongoing mental injury in a negligence action)).

Here, Plaintiffs claim Defendants created a danger of sexual abuse or misconduct for K.K. by placing a minor foster child, I.G., in the home "in conscious disregard of the risk to K.K. and the children within the Kuyper household." Second Amended Complaint, ¶62, docket #51 at 11. Plaintiffs assert that K.K. has been "injured by such infringement and has incurred, and will continue to incur damages indefinitely." *Id.*, ¶ 68, docket #51 at 12 (emphasis added). According to Defendants' unrebutted statement, the Plaintiffs are seeking up to $3,000,000.00 in compensatory damages, "including damages for emotional distress, humiliation, loss of enjoyment of life and other pain and suffering." Motion, ¶ 3, docket #75 at 2; *see also* docket #51 at 15.

Because the Plaintiffs assert an ongoing mental injury, the Court finds that Defendants have demonstrated K.K.'s mental condition is in controversy for purposes of Rule 35(a) and have shown

good cause for a psychological examination of K.K.[1]

B.     Scope of the Examination

Although the Court has found Defendants are entitled to an examination of K.K., the Court retains considerable discretion to establish the scope, manner and conditions of the examination. *Simpson*, 220 F.R.D. at 363. As stated above, Defendants seek an examination of K.K. consisting of five one-hour sessions with its retained expert, Dr. Karen Purcell, and two one-hour interviews with K.K.'s parents and treating therapist for a history and background on K.K. The Plaintiffs object to Defendants' choice of examiner, the requested number of examinations, and the unsupervised nature of the examinations. Moreover, Plaintiffs object to Defendants' request for its psychologist to interview K.K.'s parents and therapist.

1.     Choice of Examiner

Plaintiffs contend that the examination should not be performed by a retained expert, but by a "truly independent" psychologist, such as K.K.'s current therapist, Dr. Bette Sheldon Long. Plaintiffs assert that "Dr. Purcell has been retained by Defendants specifically as an adverse witness whose goal is to discount or otherwise minimize the affect that the sexual assault has had on K.K." and that K.K. should not be subjected to "repeated questioning by an adverse expect [sic] without some way for that child's parents, therapist, or counsel to know what occurred during the interrogation." Docket #80 at 6.

A court may appoint a different physician if the proposed doctor plans to use a discredited technique or one of questionable validity. *Simpson*, 220 F.R.D. at 363 (citing *Tomlin*, 150 F.R.D.

---

[1]The Court notes that, while Plaintiffs object to the scope and conditions of the requested examination, they do not appear to challenge whether K.K.'s mental injury has been placed in controversy.

at 632). Here, however, there is no indication in the record that Plaintiffs challenge Dr. Purcell's qualifications or methods by which to conduct the examination. Rather, Plaintiffs appear to be concerned with Dr. Purcell's apparent bias as a retained expert. Such concern is insufficient to convince the Court to choose a different examiner. *Id.* (citing *Looney v. Nat'l R.R. Passenger Corp.*, 142 F.R.D. 264, 266 (D. Mass. 1992) (generally, objections based upon the potential bias or prejudice of the chosen physician will be left for trial and cross-examination)).

Thus, the Court grants Defendants' motion in this respect and finds that the examination may be conducted by Dr. Purcell.

### 2. Number of Examinations

Plaintiffs contend that K.K.'s treating therapist has "grave concern ... of the potentially devastating effects that multiple hour-long interrogations by Dr. Purcell would have on K.K., in the absence of any support from her parents or Dr. Sheldon Long" and that "[m]ultiple interrogations of K.K. over five hours and days likely will cause K.K. to relapse back to the earliest days following the sexual assault undoing years of therapy." Docket #80 at 6, 7; *see also* Affidavit of Bette Sheldon Long, Ph.D., ¶ 4, docket #80-1 at 1.

Courts in this district have adopted a burden-shifting approach to decide cases where a party claims that an independent examination may be harmful to the examinee. *See Pena v. Troup,* 163 F.R.D. 352, 355 (D. Colo. 1995). The *Pena* court stated, in pertinent part:

> The Court agrees with the jurisdictions which have adopted [the *Lefkowitz v. Nassau County Medical Center,* 94 A.D.2d 18, 462 N.Y.S.2d 903 (1983)] burden-shifting approach to decide cases such as this one. Under that standard, Plaintiffs must first demonstrate that it is *prima facie* potentially dangerous for [the plaintiff] to submit to the [requested examination]. [Once] Plaintiffs have satisfied their burden, the burden shifts to Defendant to demonstrate the need for the [requested examination] and its safety.

5

*Pena*, 163 F.R.D. at 355. Here, the Plaintiffs present testimony by K.K.'s treating therapist, Dr. Sheldon Long, that multiple sessions with Dr. Purcell will "likely" cause harm to K.K. The Court is not qualified by training or experience to second-guess the professional judgment of a licensed psychologist with more than 20 years' experience. *See Simpson*, 220 F.R.D. at 363. Thus, the Plaintiffs have met their initial burden.

Defendants respond that "Plaintiffs appear to assume that Dr. Purcell will utilize each of the five sessions to subject K.K. to repeated questioning about the alleged sexual assault in order to discredit her story. The reality is that a small portion of the examination would involve discussion of the incident underlying this case, and the vast majority would be directed to understanding K.K.'s present mental health status and evaluating the claims of long-term future damage." Docket # 82 at 6-7. Defendants attach not only Dr. Purcell's affidavit explaining her methods for evaluation, but also a letter from Dr. Purcell describing in further detail her intended actions with K.K. over the course of five sessions.[2] *See* Declaration of Dr. Kathleen Purcell, docket #75-2; *see also* August 24, 2010 Letter from Dr. Purcell, docket #82-2. Dr. Purcell attests that she "will need to conduct cognitive assessment, formal social and emotional assessment, and play interview. Because of K.K.'s age and reported difficulties with attention and impulsivity, it will be necessary to break this testing up into approximately five one-hour sessions. ... I believe that a series of shorter sessions will help K.K. and I develop a good rapport, minimize any potential stress on K.K., and will give me the best opportunity to conduct a complete and thorough evaluation by allowing me to observe her over a period of time." Purcell declaration, ¶ 5, ¶6, docket #75-2 at 1-2.

---

[2]Although the Court need not consider unsworn statements in determining this motion, the letter provided by Dr. Purcell is simply an expanded explanation of the methods described in her declaration.

The Court finds that Dr. Purcell's qualifications, methodology and explanations indicate a reasonable need for this qualified professional to examine six-year-old K.K. over the course of five one-hour sessions, particularly considering K.K.'s young age and the unrebutted reported behavioral difficulties. This Court has no reason to doubt Dr. Purcell's professionalism and will assume that Dr. Purcell will conduct herself accordingly to achieve a complete and thorough evaluation keeping always in mind K.K.'s safety and well-being. As always, however, if there are concerns regarding Dr. Purcell's professionalism, the Court will address such concerns at the appropriate time.

Accordingly, the motion is granted in this respect. Dr. Purcell may conduct her examination of K.K. over the course of five one-hour sessions.

### 3. Background Interviews

Plaintiffs argue that the Court has no discretion to order a Rule 35 examination of non-parties, including Dr. Sheldon Long, and that any information requested from Loretta Kuyper should be sought in the form of a discovery request or deposition. Docket #80 at 8. The Court agrees that such information should be obtained through discovery. While the Court recognizes Dr. Purcell's need for K.K.'s history and background information, Defendants have stated no reason why such information cannot be obtained through the discovery process. Therefore, Defendants' motion is denied in this respect.

### 4. Supervision

Plaintiffs contend that, due to her age and vulnerability, K.K. should be accompanied at her examination by her treating therapist, Dr. Sheldon Long. Defendants counter that the presence of a third person could be detrimental to Dr. Purcell's ability to properly evaluate K.K. In particular, Dr. Purcell attests that Mrs. Kuyper's or Dr. Sheldon Long's presence might influence K.K.'s

7

reporting, as she may be inclined to say what she thinks her mother or therapist wants her to say. Purcell declaration, ¶ 8, docket #75-2 at 2. Dr. Purcell asserts that, in light of the sensitive nature of the discussion topics, the presence of a third person might cause K.K. to guard, alter or disguise her responses. *Id.* In Dr. Purcell's "professional opinion, any diagnosis of K.K.'s condition will be of questionable validity if third parties are permitted to attend the evaluation." *Id.*

"Whether to allow a tape recorder or a third person at the examination of plaintiff raises only a single issue"; that is, whether the examination should be "supervised." *See Hertenstein v. Kimberly Home Health Care, Inc.*, 189 F.R.D. 620, 628 (D. Kan. 1999); *see also Tomlin*, 150 F.R.D. at 631-32 (considering the presence of an attorney or a recording device to equate to the presence of a third party). "[T]he party seeking the presence of a third party or a recording device must carry the burden of convincing the court." *Hertenstein*, 189 F.R.D. at 630 (quoting *Galieti v. State Farm Mut. Auto. Ins. Co.*, 154 F.R.D. 262, 265 (D. Colo. 1994)). A determination in this regard depends upon the particular facts of the case. *Id.*

The Court has reviewed the parties' positions, the record and substantial relevant case law regarding this issue. Considering K.K.'s age and vulnerability, the Court leans toward allowing some sort of supervision of the examination by a third person or recording device. At the same time, the Court recognizes the inherent difficulties in conducting an impartial and workable evaluation with the presence of a third party that may influence the child. Therefore, the Court reserves judgment on this matter and directs the parties to appear before the Court for a hearing on this single issue.

**III.    Conclusion**

Accordingly, for the reasons stated above, it is hereby ORDERED that Defendants' Motion

to Compel Independent Medical Examination of Plaintiff K.K. [filed August 3, 2010; docket #75] is **granted in part and denied in part** as set forth herein, and the Court reserves judgment on the single issue of whether the Rule 35 examination of K.K. will be supervised. In accordance with this order, the parties are directed to appear before the Court in person for a hearing regarding the single issue on Tuesday, **September 21, 2010, at 9:00 a.m.** in Courtroom 203 on the second floor of the Byron G. Rogers United States Courthouse, 1929 Stout Street, Denver, Colorado.

Dated at Denver, Colorado, this 7th day of September, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge